## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

MANAEL ORTIZ-GUZMAN,

          Plaintiff,

v.                                                            Case No:   6:24-cv-1708-JSS-LHP

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

Manael Ortiz-Guzman ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits.   Doc. No. 1.   Claimant raises one assignment of error regarding the Commissioner's final decision, and based on that argument, requests that the matter be remanded for further administrative proceedings.   Doc. No. 14; *see also* Doc. No. 19.   The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and should be affirmed.   Doc. No. 16.   For the reasons discussed herein, it is **RESPECTFULLY RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

## I.    PROCEDURAL HISTORY.

On March 3, 2021, Claimant filed an application for disability insurance benefits, alleging that he became disabled on December 12, 2020.   R. 24, 85, 214–15.[1]   His claim was denied initially and on reconsideration, and Claimant requested a hearing before an ALJ.   R. 105, 114, 126.   A hearing was held before the ALJ on March 31, 2023, at which Claimant appeared with an attorney.   R. 48–79.[2]   Claimant and a vocational expert ("VE") testified.   *Id.*   After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.   R. 24–39.   On July 22, 2024, the Appeals Council denied Claimant's request for review. R. 1–6.   Claimant now seeks review in this Court.   Doc. No. 1.

## II.    THE ALJ'S DECISION.

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a).   R. 24–39.[3]   The ALJ

---

[1] The transcript of the administrative proceedings is available at Doc. No. 12, and will be cited as "R. ___."   In the transcript, the "Application Summary for Disability Insurance Benefits" states that Claimant applied for benefits on March 4, 2021, but according to the ALJ's decision and other application documents, Claimant filed the application on March 3, 2021.   *Compare* R. 214–15, *with* R. 24, 85.   Because the application date is not at issue in nor dispositive of this appeal, the undersigned utilizes the application date stated by the ALJ:   March 3, 2021.

[2] The hearing was initially scheduled for November 17, 2022, but was postponed. *See* R. 80–84.

[3] An individual claiming Social Security disability benefits must prove that he or she is disabled.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   "The Social Security Regulations outline a five-step,

first found that Claimant meets the insured status requirements of the Social Security Act through December 31, 2025.   R. 26.   The ALJ further found that Claimant had not engaged in substantial gainful activity since December 12, 2020, the alleged disability onset date.   *Id.*   The ALJ also found that Claimant suffered from the following severe impairments:   degenerative joint disease; status-post total arthroplasty of the right knee; and obesity.   *Id.* [4]   However, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   R. 28–29.

After consideration of the entire record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in the Social Security regulations,[5] except:

_____

sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

[4] The ALJ determined that Claimant's impairments of acid reflux disease, hiatal hernia, depression, and substance use disorder were non-severe.   R. 27–28.

[5] The social security regulations define light work to include:

> [H]e can stand and walk for a total of four hours in an eight-hour workday; sit for about six hours in an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; never work around unprotected heights or moving mechanical parts; and never operate a motor vehicle as part of job duties performed.

R. 29.   The ALJ found that Claimant was unable to perform any past relevant work, including work as an industrial truck operator, material handler, or construction worker.   R. 37.   However, considering Claimant's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Claimant could perform, representative occupations to include mail clerk, marker, garment sorter, lens inserter, document preparer, and final assembler.   R. 38–39. Accordingly, the ALJ concluded that Claimant was not under a disability, as defined in the Social Security Act, from the alleged disability onset date (December 12, 2020) through the date of the decision.   R. 39.

---

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

## III.    STANDARD OF REVIEW.

The Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam).   The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.    ANALYSIS.

Claimant raises one assignment of error in this appeal: that the ALJ erred in evaluating the medical evidence of record, including medical opinions, related to his physical impairments.    Doc. No. 14; *see also* Doc. No. 19.    The Commissioner responds in opposition.    Doc. No. 16.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work.    *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004), *superseded on other grounds by* 20 C.F.R. § 404.1520c, 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a(4))(i)–(v).    The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440 (citing 20 CFR § 404.1545(a)).    In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources.    20 C.F.R. § 404.1545(a)(3).

Claimant filed his application for disability benefits on March 3, 2021.    R. 24, 85, 214–15.    Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings.    We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.    When a medical source provides one or more medical opinions or prior administrative medical findings, we will

consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.[6]  The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).   We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 404.1520c(a).   The regulations further state that because supportability and consistency are the most important factors under consideration, the Commissioner "will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision."   *Id.* § 404.1520c(b)(2). "Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record."   *Welch v. Comm'r of Soc. Sec.*, No. 6:20-cv-1256-DCI, 2021 WL 5163228, at *2 (M.D. Fla. Nov. 5, 2021) (footnote omitted) (citing 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2)).

---

6 Subparagraph (c) provides that the factors to be considered include:   (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of treatment relationship; frequency of examination; purpose of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding.   20 C.F.R. § 404.1520c(c).

Pursuant to the applicable regulations, the Commissioner is not required to articulate how he "considered each medical opinion or prior administrative medical finding from one medical source individually."    20 C.F.R. § 404.1520c(b)(1). "Courts have found that '[o]ther than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness.'" *Bell v. Comm'r of Soc. Sec.*, No. 6:20-cv-1923-DCI, 2021 WL 5163222, at *2 (M.D. Fla. Nov. 5, 2021) (quoting *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019)).

Here, the ALJ's decision reflects that the pertinent medical opinions related to Claimant's physical impairments[7] include: (1) a May 2021 assessment by Thomas Brodrick, M.D., Claimant's orthopedic surgeon; (2) a July 2021 review by Prianka Gerrish, M.D., a s state agency consultant; (3) an April 2022 review by Sharka Junejo, M.D., a state agency consultant; and (4) a November 2022 opinion from J. Richard Rhodes, M.D., Claimant's orthopedic surgeon.    R. 35–36.    Claimant's argument centrally concerns the ALJ's consideration of two of these medical opinions (Dr. Junejo and Dr. Rhodes) in light of his failed knee replacement surgery (March 2022),

---

[7] Claimant raises no issues in this appeal with regard to the ALJ's consideration of his mental impairments.

which necessitated a subsequent revision surgery (November 2022).[8] Claimant

challenges the ALJ's reliance or weight placed (or not placed) on medical opinions

during these periods, lack of inferences taken from the evidence regarding his

surgeries, and the ALJ's alleged substitution of lay judgment for the medical

opinions of a treating physician without seeking additional medical evidence in

support.   Doc. No. 14, at 4–12; *see also* Doc. No. 19.[9]

With regard to these opinions, the ALJ's decision states:

> In April 2022, Sharka Junejo, M.D., a State Agency physical medical
> consultant, reviewed the record on reconsideration, affirming most of
> Dr. Gerrish's assessment, other than finding that the claimant could
> never climb ladders, ropes, or scaffolds, and that he had to avoid even
> moderate exposure to hazards.   On both initial review and
> reconsideration, the State Agency psychological medical consultants
> found that the claimant's mental impairments imposed no more than
> mild functional limitations and were, therefore, found to be non-severe

---

[8] The record reflects that Claimant underwent a right total knee replacement on
March 7, 2022.  *E.g.*, R. 711.  The record also reflects that this was diagnosed as a failed
surgery.  *E.g.*, R. 935.  Claimant underwent a revision surgery on November 16, 2022.
*E.g.*, R. 1651.

[9] Claimant is not arguing that the ALJ failed to consider any medical opinions of
record, nor that the ALJ failed to comply with the applicable regulations.   Instead,
Claimant's arguments concern how persuasive the ALJ considered the medical opinions
of record and the weight assigned to them.   Doc. Nos. 14, 19.   Accordingly, the analysis
in this report is so limited.   *See Borroto v. Comm'r of Soc. Sec.*, No. 2:17-cv-673-FtM-99CM,
2019 WL 488327, at *1, n. 2 (M.D. Fla. Jan. 8, 2019), *report and recommendation adopted*, 2019
WL 290599 (M.D. Fla. Jan. 23, 2019) ("Any issue not raised by Plaintiff on appeal is deemed
to be waived." (citing *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir.
2004) ("[A] legal claim or argument that has not been briefed before the court is deemed
abandoned and its merits will not be addressed."))); *see also Solutia, Inc. v. McWane, Inc.*,
672 F.3d 1230, 1239 (11th Cir. 2012) ("There is no burden upon the district court to distill
every potential argument that could be made based on the materials before it . . . ." (quoting
*Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995))).

(Exhibits 2A and 4A).  The opinions of the medical consultants are generally persuasive the fully developed record continues to support the finding of these sources that the claimant was able to perform a range of light exertional work as set forth herein, on a sustained and continuous basis.  There is a high degree of consistency between the opinions of the two physical medical consultants and the two psychological medical consultants, respectively.  Additionally, these opinions are well supported by the longitudinal treatment record.  The undersigned notes that the regulations consider each of these sources to be a highly qualified, acceptable medical source as well as an expert in Social Security disability evaluation.  With respect to the opinions of the two physical medical consultants, the undersigned notes a slight difference between them in that the source at the reconsideration level of review precluded climbing of ladders, ropes, and scaffolds, whereas the source at the initial level of review restricted this activity to occasionally, and the source at the reconsideration level of review essentially precluded all work around unprotected heights and moving mechanical parts whereas the source at the initial level appeared to restrict only "concentrated" exposure to these workplace hazards.  The undersigned finds that the fully developed record supports the opinion of the source at the reconsideration level of review, which is therefore considered more persuasive.

. . . .

In November 2022, J. Richard Rhodes, M.D., the claimant's orthopedic surgeon, completed a medical source questionnaire, indicating that he had been treating the claimant for six months.  The claimant was diagnosed with a failed right total knee arthroplasty.  Dr. Rhodes indicated that the claimant could sit for zero to two hours in an eight-hour workday.   The claimant could do minimal walking and standing with a walker only.  Dr. Rhodes indicated that the claimant could never lift and carry even less than ten pounds and never use upper or lower extremities for pushing or pulling.  The claimant could never reach, handle, finger, or feel.  The claimant's pain or other symptoms would frequently interfere with the attention or concentration needed to perform even simple work tasks.   He should elevate his legs when seated.  The claimant was expected to be absent from work four or more days per month due to his impairments and/or treatment.  He was receiving physical therapy treatment pending revision right total

knee arthroplasty surgery scheduled for November 16, 2022. Dr. Rhodes cited objective findings of limited range of motion, pain, swelling, and antalgic gait as supporting his assessment (Exhibit 21F). This opinion is unpersuasive for purposes of determining the claimant's residual functional capacity during the entire period at issue. Significantly, Dr. Rhodes provided this opinion when the claimant was awaiting the scheduled revision knee surgery. It appears to be based on the claimant's symptoms during an exacerbation prior to surgery and is therefore relevant to a very limited period. The assessed limitations are inconsistent with the record during the period being adjudicated. Further, some of the assessed limitations, such as the extreme limitation on the ability to sit, and the inability to push, pull, reach, handle, finger, or feel are unsupported by clinical findings even at the time the questionnaire was completed.

R. 35–36. The ALJ also addressed throughout the decision the medical evidence of record, which included discussion of the records related to the first knee replacement surgery in March 2022, Claimant's complaints thereafter, that the March 2022 surgery was unsuccessful, and that Claimant was required to undergo a revision surgery in November 2022. R. 30–33.

Claimant's arguments are this: (1) the ALJ erred in finding Dr. Junejo's opinions, rendered on April 18, 2022, *see* R. 103, persuasive because Claimant could not reasonably have been able to perform light work only a month after his first knee replacement surgery, rendering Dr. Junejo's opinions unreasonable; (2) the ALJ erred in finding Dr. Junejo's opinions persuasive because his first knee replacement surgery failed necessitating a revision surgery after Dr. Junejo's opinions, rendering Dr. Junejo's opinions "outdated" and based on an incomplete record; (3) because Dr. Junejo's April 2022 opinion was rendered more than twelve

months prior to the ALJ's decision, the ALJ erred in failing to evaluate whether Claimant satisfied the disability criteria during any twelve-month period during the period under consideration (*i.e.*, from the date of Dr. Junejo's opinion (April 18, 2022) through the date of the decision (July 13, 2023)); (4) the ALJ erred in rejecting Dr. Rhodes's opinions because Dr. Rhodes treated Claimant, and was the only physician to provide any opinions that accounted for Claimant's revision surgery; (5) because the ALJ rejected Dr. Rhodes's opinions and Dr. Junejo's opinions did not account for the failed first knee replacement surgery and the revision surgery, the ALJ effectively substituted his lay opinion for medical professionals in formulating the RFC; and (6) to reject Dr. Rhodes's opinions, the ALJ was required to seek additional medical evidence to support the RFC determination, such as an updated consultative examination, and his failure to do so failed to fulfill his independent duty to develop the administrative record.   Doc. No. 14, at 4–12; *see also* Doc. No. 19.

Upon consideration, the undersigned agrees with the Commissioner that Claimant is in essence impermissibly inviting the Court to reweigh the evidence. But "the Court is limited to determining whether the ALJ's decision is supported by substantial evidence, regardless of whether the Court agrees with that decision." *Gil v. Comm'r of Soc. Sec.*, No. 6:20-cv-1850-LHP, 2022 WL 445498, at *6, n.10 (M.D. Fla. Feb. 14, 2022) (citing *Phillips*, 357 F.3d at 1240 n.8 (stating that the district court

"may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].")).

As an initial matter, at bottom, Claimant is arguing that the ALJ erred in finding more persuasive the opinions of state agency consultant Dr. Junejo over the opinions of treating provider Dr. Rhodes.  Doc. Nos. 14, 19.  But the "new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion."  *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. 2022);[10]  *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022); *see also Ingram v. O'Malley*, No. 7:23-CV-00653-LSC, 2024 WL 3700207, at *3 (N.D. Ala. Aug. 7, 2024) ("The removal of the treating source rule is intended to eliminate confusion about a hierarchy of medical sources and instead focus adjudication on the evidence, as well as ensure that courts are not reweighing the evidence under the substantial evidence standard of review, which is intended to be a highly deferential standard." (citation and quotation marks omitted)).[11]

---

[10]  Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

[11]  The undersigned therefore finds the out-of-circuit authority applying the treating physician rule on which Claimant relies unpersuasive.  Doc. No. 14, at 7, Doc. No. 19, at 4; *see Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011); *Morales v. Apfel*, 225 F.3d 310, 319-20 (3d Cir. 2000); *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001).

Moreover, Claimant's more specific arguments are unpersuasive on the facts of this case and under the new regulations.  First, Claimant takes issue with the ALJ finding persuasive Dr. Junejo's opinions because Dr. Junejo's opinions did not adequately account for his first knee replacement surgery from March 2022 and because Dr. Junejo's opinions were "outdated" due to the revision surgery in November 2022.  Doc. No. 14, at 4–7; Doc. No. 19, at 3–4.[12]  However, as the Commissioner argues, the ALJ's decision reflects that he did not wholesale accept Dr. Junejo's opinions without further analysis; instead, the ALJ considered Dr. Junejo's opinions in conjunction with the remaining evidence of record (to include the medical records noting Claimant's first surgery failed and a revision surgery was required), Claimant's subjective complaints, effectiveness of treatment, and

---

[12] Claimant points to a University of Maryland St. Joseph Medical Center website to argue that recovery periods for knee replacement surgery would have been longer than allowed by Dr. Junejo's opinions.  Doc. No. 14, at 5; Doc. No. 19, at 4; *see* https://www.umms.org/sjmc/health-services/orthopedics/joint-replacement/knee-replacement/continuing-your-recovery-knee-surgery.  But given that the website provides only general information and does not speak to Claimant specifically, the undersigned finds that it has little persuasive value here.  *See, e.g., Fullerton v. Comm'r of Soc. Sec.*, No. 3:14CV67-SAA, 2014 WL 5800098, at *3 (N.D. Miss. Nov. 7, 2014) (finding unpersuasive reliance on websites discussing possible symptoms of the claimant's impairments without the claimant providing a medical opinion from a physician indicating that the claimant suffered impairments greater than the RFC); *Engram v. Colvin*, No. 1:12CV388-MHT, 2013 WL 4442023, at *10 (M.D. Ala. Aug. 15, 2013) ("'A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms' or an internet article." (quoting 20 C.F.R. § 404.1508.)).

activities of daily living, R. 30–37, none of which Claimant addresses in his briefing,

*see* Doc. Nos. 14, 19, and all of which are proper considerations for the ALJ when

formulating the RFC.   20 C.F.R. § 404.1545(a)(3).

Because the decision reflects that the ALJ considered Claimant's medical

condition as a whole, the undersigned finds unpersuasive Claimant's contention

that the ALJ improperly found persuasive Dr. Junejo's opinions.   *See, e.g.*, *Burgess*

*v. O'Malley*, No. 8:23-cv-290-AEP, 2024 WL 982115, at *5 (M.D. Fla. Mar. 7, 2024)

(rejecting argument that the ALJ erred in relying on "outdated medical opinions"

from state agency consultants where the ALJ properly evaluated relevant evidence

and considered the claimant's condition as a whole); *Durborow v. O'Malley*, No. 6:22-

cv-2295-JRK, 2024 WL 706079, at *7 (M.D. Fla. Feb. 21, 2024) ("Of course, the

nonexamining opinions occurred earlier in the administrative process—at the initial

denial and reconsideration phases—as is typical.   This timing does not, in and of

itself, mean the opinions are 'outdated,' though."); *see also Cooper v. Comm'r of Soc.*

*Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (under older regulations, noting that

"even if the non-examining doctor was unable to review all of [claimant's] medical

records before making her RFC determination, she cited several portions of the

record in support of her conclusions, and the ALJ, who made the ultimate

determination, had access to the entire record as well as [the claimant's]

testimony"); *Hall v. Saul*, No. 8:20-cv-197-TGW, 2021 WL 1100982, at *7 (M.D. Fla.

Mar. 23, 2021) (under older version of regulations, finding ALJ did not err in giving more weight to reviewing doctors' opinions over examining doctor where the ALJ "did not adopt wholesale the opinions of the reviewing doctors . . . [t]o the contrary, the [ALJ] found, after considering the entire record, that the plaintiff's mental impairments were severe and warranted substantial mental functional limitations"); *Haynes v. Comm'r of Soc. Sec.*, No. 8:18-cv-2673-T-MAP, 2019 WL 5884669, at *3 (M.D. Fla. Nov. 12, 2019) ("It is not error, however, for an ALJ to rely on the allegedly outdated opinion of a state agency consultant, when it is obvious the ALJ has considered all the evidence."); *cf. Church v. Berryhill*, No. 17-159, 2018 WL 1696701, at *1–2 (W.D. Pa. Apr. 6, 2018) (affirming ALJ's reliance on the opinion of a state agency reviewer whose opinion predated the claimant's hand surgery where the record reflected the ALJ considered the claimant's condition as a whole).[13]

Second, and importantly, Claimant does not argue that the ALJ failed to comply with the applicable regulations in assessing the medical opinions of record.

---

[13] In his briefing, Claimant also points to evidence of record demonstrating that he used a walker into 2023, which he follows with a statement that the ALJ "clearly" erred in relying on Dr. Junejo's opinions, but without connecting the two. Doc. No. 14, at 7. Claimant does not address the ALJ's consideration of Claimant's use of a walker or the finding in the decision that "the record fails to document the medical necessity of the need for an assistive device for a continuous period of at least 12 months during the relevant period." R. 31. Accordingly, given that Claimant has waived any issue in this regard, the undersigned does not further address Claimant's use of a walker.

Doc. Nos. 14, 19.  Nor does Claimant address the reasons given by the ALJ for discounting Dr. Rhodes's opinions, such that the ALJ found that Dr. Rhodes's opinions were based on exacerbated symptoms prior to his revision surgery and thus related to a limited period, the assessed limitations were inconsistent with the record during the entire disability period, and some of the opined limitations were unsupported even during the pre-revision-surgery period to which the opinions related.  R. 36.  Accordingly, Claimant's general contention that the ALJ erred in finding unpersuasive Dr. Rhodes's opinions is unavailing.  *Cf. Durborow*, 2024 WL 706079, at *8 (affirming over general contention that the ALJ erred in not relying on medical opinions where the ALJ took into account and explained the consistency and supportability factors under the new regulations); *see also Gil*, 2022 WL 445498, at *6 (no error in ALJ's finding that medical opinion was impacted by close proximity to surgery).

Claimant does argue that because the ALJ should not have relied on Dr. Junejo's opinions, and instead should have adopted Dr. Rhodes's opinions, the ALJ "failed to evaluate or consider whether [he] may have satisfied the disability criteria for any 12 month interval during the period under consideration," and that Dr. Rhodes's opinions should be "deemed to relate back to at least the time of [his] first failed surgery, due to the fact that Dr. Junejo did not know or understand that it had failed."  Doc. No. 14, at 8–9; *see also* Doc. No. 19, at 2–3.  Besides citation to

regulations defining RFC and disability periods, Claimant cites no applicable legal authority to support these arguments, *see id.*, and as discussed above, the undersigned recommends the Court find the ALJ's consideration of the opinions of Drs. Junejo and Rhodes supported by substantial evidence, rendering these arguments unavailing. Further, as discussed above, the decision reflects that the ALJ considered Claimant's first failed surgery and subsequent revision surgery in formulating the RFC, making Claimant's argument that the ALJ failed to consider any potential disability during this period unpersuasive. *See* R. 30–37 (discussing Claimant's surgeries, medical evidence related thereto, evidence of use of (or non-use of) assistive devices before and after the surgeries, receipt of physical therapy, pain management, and Claimant's subject complaints).

Finally, Claimant argues that because the ALJ relied on Dr. Junejo's pre-revision-surgery opinions and found Dr. Rhodes opinions unpersuasive, the ALJ impermissibly substituted his lay judgment for those of medical professionals in formulating the RFC. Doc. No. 14, at 9–10; Doc. No. 19, at 3. Relatedly, Claimant contends that if the ALJ wished to reject Dr. Rhodes's opinions, the ALJ was required to obtain additional medical evidence, such as a consultative examination. Doc. No. 14, at 11–12. On this record, the undersigned finds these arguments unpersuasive.

First, "[t]here is no requirement . . . that an ALJ's RFC must be based on a physician's opinion.  While the ALJ considers medical opinions in assessing the RFC, it is the ALJ's responsibility to determine the ultimate issue of the Claimant's RFC, and not the physicians."  *Barbero v. Comm'r of Soc. Sec.*, No. 6:21-cv-527-DCI, 2022 WL 4095059, at *9 (M.D. Fla. Sept. 7, 2022) (citing *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (rejecting a claimant's argument that the ALJ's RFC must be based on a physician's opinion)); *see also Moore v. Soc. Sec. Admin, Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016) ("[T]he task of determining a [Plaintiff's RFC] and ability to work rests with the [ALJ], not a doctor." (citation omitted)).  And here, the decision reflects that the ALJ considered the opinion evidence of record, determined its persuasiveness, and summarized the medical evidence contained in the record, demonstrating that "the RFC determination was based on a careful analysis."  *See Barbero*, 2022 WL 4095059, at *9.  Accordingly, Claimant's argument that the ALJ substituted his lay opinion for those of medical professionals is unpersuasive.  *See id.*; *see also Perez v. Comm'r of Soc. Sec.*, No. 23-13018, 2024 WL 3292612, at *2 (11th Cir. July 3, 2024) (finding that when an ALJ considered the treatment records and administrative medical findings and properly evaluated them, then the ALJ did not substitute her opinion for that of the medical experts); *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 691 n.1 (11th Cir. 2020) ("ALJs are permitted, and in fact required, to use judgment in weighing

competing evidence and reaching a final determination as to whether an applicant is disabled.   Here, the ALJ did not rely on his own independent findings; instead, the ALJ considered the medical record, assigned 'great weight' to certain medical experts and only 'some weight' to other experts . . ., and stated his reasons for doing so.   This was entirely proper." (citations omitted)).

Second, "[e]ven though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)).   Here, there is nothing to suggest that the record was lacking sufficient evidence for the ALJ to make an informed decision.   *See id*.   Indeed, besides citing to the March 2022 and November 2022 surgeries and Dr. Rhodes's opinions, which the ALJ clearly considered in the decision, Claimant points to nothing further.   *See* Doc. Nos. 14, 19.   Accordingly, Claimant has not established that additional medical evidence or a consultative examination was required.   *See generally Doughty*, 245 F.3d at 1281 ("The regulations 'normally require' a consultative examination only when necessary information is not in the record and cannot be obtained from the

claimant's treating medical sources or other medical sources." (citing 20 C.F.R. § 404.1519a(b)).

In sum, Claimant's "disagreement with the [ALJ] essentially is a difference of opinion as to the weight to be given to certain circumstances.   The [ALJ], however, is given the responsibility to assess those circumstances so that [Claimant's] different opinion must yield."   *See Hall*, 2021 WL 1100982, at *7.   Because the ALJ complied with the applicable regulations in addressing the medical opinions of record and formulating Claimant's RFC, and the decision is supported by substantial evidence, the undersigned will respectfully recommend that the Court reject Claimant's sole assignment of error.   *See Robinson v. Comm'r of Soc. Sec.*, No. 5:22-cv-18-MAP, 2023 WL 2473427, at *5 (M.D. Fla. Mar. 13, 2023) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019))); *Hogan v. Comm'r of Soc. Sec.*, No. 2:22-cv-223-KCD, 2022 WL 17818653, at *6 (M.D. Fla. Dec. 20, 2022) ("The substantial evidence threshold is not high and defers to the presiding ALJ, who heard testimony and reviewed the medical evidence.   Given this low bar, the Court will affirm." (citing *Rodriguez v. Berryhill*, 836 F. App'x 797, 803 (11th Cir. 2020)).

## V.    RECOMMENDATION.

Upon    consideration    of    the    foregoing,    it    is    **RESPECTFULLY**

**RECOMMENDED** that the Court **AFFIRM** the final decision of the Commissioner. It is further **RECOMMENDED** that the Court direct the Clerk of Court to issue a judgment consistent with its Order on this Report and Recommendation and, thereafter, to close the file.

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 6, 2025.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy